UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUMONTINEE SRIDEJ,<br><br>　　　　　　　　　Petitioner,<br>　v.<br>ANTONY J. BLINKEN, *et al.*,<br><br>　　　　　　　　　Respondents. | Case No. 2:23-cv-00114-ART-BNW<br><br>ORDER |

Petitioner Sumontinee Sridej filed this 28 U.S.C. § 2241 amended petition for writ of habeas corpus (ECF No. 14) seeking relief from extradition to the Kingdom of Thailand (Thailand) on charges of 36 counts of fraud. Also before the Court is Sridej's Motion to Stay Case (ECF No. 7). The Court denies Sridej's petition, denies her motion to stay case as moot, and directs the clerk to enter judgment accordingly.

**I.　Background**

　**a. Governing Law**

"Extradition law is based on a combination of treaty law, federal statutes, and judicial doctrines dating back to the late nineteenth century. *Santos v. Thomas*, 830 F.3d 987, 990 (9th Cir. 2016) (en banc). The extradition process begins when the foreign state seeking extradition makes a request directly to the U.S. Department of State. *Id.* at 991. If the State Department determines that the request falls within the governing extradition treaty, a U.S. Attorney files a complaint in federal district court indicating an intent to extradite and a provisional warrant for the person sought. *Id.*

A magistrate judge, upon the filing of a sworn complaint by a U.S. Attorney, may hold an extradition hearing. *Id.* Such a hearing is akin to a grand jury investigation; its purpose is not to determine guilt, but merely to determine

"whether there is evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or, in other words, whether there is probable cause." *Id.* (quoting *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006)). "Given the limited nature of extradition proceedings, neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure apply." *Id.* at 992. Rather, documents "shall be received and admitted as evidence" if they are "properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped." 18 U.S.C. § 3190. If, after considering the evidence presented, the magistrate judge finds probable cause to extradite, she *must* issue a certification of extraditability. 18 U.S.C. § 3184.

**b. Extradition Proceedings**

Sridej, a citizen of Thailand who came to the United States in January 2015[1], is charged with 36 counts of fraud under the Thai Penal Code. On February 3, 2015, the Southern Bangkok Criminal Court issued an arrest warrant for Sridej. *See* Case No. 2:22-mj-00792-mj, ECF No. 1 at 36, 42. Thailand requested that the U.S. government extradite Sridej pursuant to the extradition treaty between the two countries. On October 7, 2022, the United States filed a sealed complaint, and an arrest warrant was issued. *Id.* at ECF Nos. 1, 3, 4.

On October 11, 2022, Sridej was arrested. *Id.* at 5. On October 12, 2022, she made her initial appearance, and was detained pending extradition certification. *Id.* at ECF Nos. 8, 15. Magistrate Judge Youchah held an Identity and Extradition hearing. *Id.* at ECF No. 24. Following post-hearing briefing, the Extradition Court certified that Sridej was subject to extradition. *Id.* at ECF No. 34.

---

[1] Sridej alleged that she arrived in the United States on January 5, 2015. (ECF No. 14 at 3.) Respondents, however, cite to U.S. Customs and Border Protection's records showing that Sridej came to the United States on January 24, 2015. (ECF No. 15 at fn 7.)

### c. Summary of Relevant Facts

Sridej was the Assistant Director for Sales and Marketing for the Value Systems Company, Ltd. ("VSC"), which is an electronics wholesale company. Case No. 2:22-mj-00792-mj, ECF No. 34 at 2. Between August 2013 and January 2015, Sridej participated in the theft of electronic products worth over 123 million baht, which equates to approximately $4 million U.S. dollars. *Id.* In January 2015, a customer of VCF (Suchin Panich Limited Partnership ("SPL"), informed VSC that is received an account receivable confirmation letter indicating that SPL purchased 533 smartphones, which SPL did not purchase. *Id.* Prior to receiving the letter, Sridej contacted SPL to warn the company that it would receive the letter and that it was sent in error. *Id.* A VSC sales associate notified VSC that an invoice that was sent to another customer, True Max Co., had not been paid. *Id.* True Max Co., however, had not purchased any of the products listed on the invoice. *Id.*

VSC conducted an internal audit and discovered that many invoices were issued at Sridej's direction to customers who had not paid such invoices, the products listed on the invoices left VSC's inventory, and the products were delivered to non-customer and co-conspirator Pitak Punyasuk ("Pitak"). *Id.* Pitak operated a retail electronics shop and told Thai investigators that Pornipom Sawaspadungkij ("Pornipom"), another co-conspirator, arranged for these products to be delivered to Pitak at below wholesale prices. *Id.* VSC checked bank accounts and found money transfers and financial transactions between Sridej and Pornipom. *Id.* Co-conspirators Pitak and Pornipom were charged with 36 counts of fraud and convicted. *Id.*

## II. Governing Standard of Review

A writ of habeas corpus is the only available avenue to challenge an order certifying extradition because there is no statutory provision for direct appeal. *Santos*, 830 F.3d at 1001. When reviewing an extradition order, the district court

reviews the extradition court's "legal rulings de novo, and its findings of fact for clear error." *Id.* " 'Because the magistrate's probable cause finding is thus not a finding of fact,' . . . it must be upheld if there is any competent evidence in the record to support it." *Id.* (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n. 10 (9th Cir. 1981)).

The scope of review of an extradition order is severely limited. *Artukovic v. Rison*, 784 F.2d 1354, 1355-56 (9th Cir. 1986). A district court's habeas review of an extradition order is limited to whether: (1) the extradition magistrate had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is "any competent evidence" supporting the probable cause determination of the magistrate. *Santos*, 830 F.3d at 1001.

### III. Discussion

#### a. Ground One

In Ground One, Sridej alleges that the treaty ratified in 1984 between the United States and Thailand is no longer valid because neither country renewed the treaty after Thailand experienced numerous coups and new constitutions. ECF No. 14 at 6-10. Sridej recounts that beginning in 1991, the government in Thailand has been supplanted at least 9 times as a result of military coups. *Id.* at 9-10. New constitutions have been instituted in 1991, 1997, 2006, 2007, 2014, and most recently in 2017. *Id.* at 9-10. She asserts that "Thailand is nominally a democracy," but "remains an authoritarian regime." *Id.* at 9. Sridej argues that each "break" in continuity of the government in Thailand is a new entity in which the United States must enter into a new treaty. *Id.* at 10. As a result, the treaty ratified between the United States and Thailand in 1984 is not valid. *Id.*

As a question of law, the Court may review this issue *de novo*. *Ivancevic v. Artukovic*, 211 F.2d 565, 567 (9th Cir. 1954). The Ninth Circuit has determined that courts defer to the U.S. Department of State's determination as to the validity

of an extradition treaty. "Judicial examination of the existence of extradition treaties has been limited by a Supreme Court decision which stressed the importance of deferring in such cases to the intentions of the State Departments of the two nations." *Arnbjornsdottir-Mendler v. U.S.*, 721 F.2d 679, 681 (9th Cir. 1983) (quoting *Terlinden v. Ames*, 184 U.S. 270 (1902)). "There is no exact formula by which it can be determined that a change of a nation's fortunes amounts to a continuance of the old or the beginning of a new nation, and there can be no better equipped vehicle for decision than the Chiefs of State of the countries concerned." *Ivancevic*, 211 F.2d at 573-74.

The Ninth Circuit highlighted in *Then v. Melendez* that the "continuing validity" of the treaty between Singapore, after its independence from the United Kingdom, and the United States "presents a political question, and [the court] must defer to the intentions of the State Departments of the two countries." 92 F.3d 851, 854 (9th Cir. 1996). Although Sridej acknowledges the deference afforded to the State Department's opinions, she argues that the Court should "engage in its own analysis" as the State Department's opinion that the treaty is valid cannot overcome Thailand's political upheaval. ECF No. 17 at 3. Sridej, however, cannot refute the evidence that neither the United States nor Thailand have ceased to recognize extradition treaty obligations between the two countries.

As stated in the declarations from Jaime Briggs ("Briggs") and Tom Heineman ("Heineman"), Attorney Advisors to the U.S. Department of State, the extradition treaty between the United States and Thailand remains in force. *See* Case No. 2:22-mj-00792-mj, ECF Nos. 1 at 13-14; 33-1 at 2-4. The extradition treaty entered into force on May 17, 1991, is listed in the pertinent extract of Treaties in Force attached to Briggs's declaration, which "includes those treaties and other international agreements entered into by the United States, which, as of [January 1, 2020], had not expired by their own terms, been denounced by the parties, replaced or superseded by other agreements, or otherwise definitely

terminated." *Id.* at ECF No. 33-1 at 5-8. He further provides that "[s]ince the Extradition Treaty's entry into force, neither the United States nor Thailand has taken the steps necessary to terminate or suspend it, either under the express terms of the Extradition Treaty, or as a matter of international law generally." *Id.* at 2. More specifically, "neither changes in government or internal unrest, nor allegations of improper procedure under Thailand's domestic law, have annulled or terminated the Extradition Treaty."[2] *Id.* As explained by Briggs, "[t]he Extradition Treaty remains legally binding," which is further demonstrated by the practice of both countries as the United States extradited a fugitive to Thailand in 2017, and Thailand extradited two fugitives to the United States in 2022. *Id.* at 3-4.

In consideration of the evidence of the U.S. Department of State's determination that the extradition treaty between the United States and Thailand is valid and in force as well as substantial case law of judicial deference to the U.S. Department of State on extradition matters, the Court finds the extradition treaty between the United States and Thailand remains valid. Accordingly, the Court denies habeas relief as to Ground One.

**b. Ground Two**

In Ground Two, Sridej alleges that the offense does not fall within the treaty's terms and is not extraditable because fraud under the Thai Penal Code is meaningfully different than Nevada's grand larceny, federal wire and mail fraud. ECF No. 14 at 11-15. Article 2 of the extradition treaty provides that an offense is extraditable "if it is punishable under the law of both Contracting Parties by imprisonment or other form of detention for a period of more than one

---

[2] Briggs cites to the Vienna Convention on the Law of Treaties ("Convention"). *See* Case No. 2:22-mj-00792-mj, ECF No. 33-1 at 3. He explains that although the United States is not a party to the Convention, the United States has described the Convention as providing an authoritative guide to international treaty law and practice, including generally on the validity and termination of treaties.

1  year or any greater punishment." *See* Case No. 2:22-mj-00792-mj, ECF No. 1 at 22. She asserts that Nevada's case law regarding grand larceny includes a specific intent requirement.[3] ECF No. 14 at 12. Federal wire fraud requires that the defendant act with the intent to defraud. *Id.* at 14. Sridej argues that the Thai fraud statute[4] lacks the key requirement that the defendant have an intent to deprive or defraud when committing the offense. ECF No. 17 at 3.

The extradition treaty incorporates the principle of dual criminality that "no offense is extraditable unless it is criminal in both countries." *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986). Dual criminality exists if the "essential character" of the acts criminalized by the laws of each country are the same and the laws are "substantially analogous." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (0th Cir. 1988). The elements of the crime allegedly committed in a foreign country need not be identical to the elements of the substantially analogous crime. *Id.* (citing *Emami v. U.S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("[D]ifferences between statutes aimed at the same category of conduct do not defeat dual criminality."). "It is enough that the conduct involved is criminal in both countries." *Oen Yin-Choy,* 858 F.2d at 1404-05; *See Emami*, 834 F.2d at

---

[3] *See Harvey v. State*, 78 Nev. 417, 419 (1962).

[4] The fraud statute under the Thai Penal Code provides:

> Whoever dishonestly deceives a person with the assertion of a falsehood or the concealment of the facts which should be revealed, and, by such deception, obtains a property from the person so deceived or a third person, or causes the person so deceived or a third person to execute, revoke, or destroy a document of right, is said to comment the offence of cheating and fraud, and shall be punished with imprisonment not exceeding three years of fined not exceeding six thousand Baht, or both.

Section 341, 83, and 91 of the Thai Penal Code. *See* Case No. 2:22-mj-00792-mj, ECF No. 1 at 35.

7

1449-50 (violation was an extraditable offense under Germany/United States treaty although Germany's definition of fraud differed from the United States's definition because Germany "does not require a knowing false representation of material fact made with the intent to deceive").

Because Sridej is charged in Thailand for conduct that would be criminal in Nevada under the state's grand larceny statute[5], the dual criminality requirement is satisfied. Respondents attached an affidavit from Public Prosecutor Noppanut Julniti ("Julniti") that sets forth Sridej's alleged conduct, including communicating to a company that was a customer of VSC that it would be receiving an invoice in error and instructing subordinates to issue bills that did not have actual purchase or borrow actions, dishonestly deceived VSC through false statements. Case No. 2:22-mj-00792-mj, ECF No. 1 at 56-104. As stated by the Extradition Court:

> The allegations in the Public Prosecutor's Affidavit detail facts demonstrating [Sridej] (1) participated in a scheme to steal electronic products on 36 occasions worth approximately $4 million U.S. dollars, (2) participated in creation of documents intended to appear VSC was sending products to one company when the products were delivered to a co-conspirator, and (3) intended to and did dishonestly communicate and instruct subordinates to record transactions that were not as reported on VSC documents. Gov't Ex. 2 (Julniti Aff.).

*See* Case No. 2:22-mj-00792-mj, ECF No. 34 at 8. Sridej's intent can be inferred from the alleged conduct on which Thailand based its charges of fraud.

Sridej relies on *United States v. Fernandez-Morris*, 99 F.Supp.2d 1358 (S.D. Fla. July 19, 1999), wherein the district court found the government failed to

---

[5] Nevada Revised Statute § 205.220 (grand larceny):

> A person commits grand larceny if the person:
> (1) Intentionally steals, takes and carries away, leads away or drives away:
>   a. Personal goods or property, with a value of $1,200 or more, owned by another person. . .

*See also* Case No. 2:22-mj-00792-mj, ECF No. 19-1.

establish dual criminality. ECF No. 17 at 4. She asserts that the district court found the government did not prove the defendant had the specific intent to defraud. *Id. Fernandez-Morris*, however, is not analogous because the evidence in *Fernandez-Morris* was insufficient to indicate criminal activity as opposed to potential civil liability. 99 F.Supp.2d at 1369. In addition, Bolivian law required a claimant to first file a civil case before proceeding with criminal charges in the circumstances. *Id.* Here, the evidence is sufficient to support the finding that Sridej's alleged conduct rose above the level of unethical business conduct to the level of criminally fraudulent behavior.

The Court finds that Sridej's alleged conduct would be prosecutable under Nevada's grand larceny statute. Because her alleged conduct is criminal in the United States/Nevada and Thailand, the principle of dual criminality is satisfied. Accordingly, the Court denies habeas relief as to Ground Two.

### c. Ground Three

In Ground Three, Sridej alleges that the offenses are not extraditable because Thailand has credible reports of torture and cases of cruel, inhumane, and degrading treatment prohibited by the United Nations Convention Against Torture ("CAT"), which is incorporated by reference into any extradition treaty. ECF No. 14 at 15-18. She asserts that because Thailand and the United States are signatories to the CAT, the absence of torture is now a condition precedent for extradition. ECF No. 17 at 5-6. Sridej agrees with Respondents that she cannot invoke her due process rights that protect her against torture but asserts that her claim in nonetheless reviewable under § 2241 and that the rule of non-inquiry does not bar consideration of her claim. *Id.*

Respondents assert that the rule of non-inquiry cannot be circumvented by invoking the CAT. ECF No. 15 at 23-24. The statutory framework of the extradition process permits courts to determine whether there is probable cause to extradite, but only the Secretary of State, and not the judiciary, makes the

1  discretionary decision of whether the fugitive "may ... be delivered" to the
2  requesting country. 18 U.S.C. § 3186; 18 U.S.C. § 3184. Respondents emphasize
3  that pursuant to the principle of non-inquiry, "it is the role of the Secretary of
4  State, not the courts, to determine whether extradition should be denied on
5  humanitarian grounds or on account of the treatment that the fugitive is likely
6  to receive upon his return to the requesting state." *Prasoprat v. Benov*, 421 F.3d
7  1009, 1016 (9th Cir. 2005). In addition, the regulations implementing the CAT
8  and the Ninth Circuit make clear that "it is the Secretary of State, not the court,
9  that makes the torture determination when an extraditee makes a torture claim."
10 *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 961 (9th Cir. 2012); *see* 8 U.S.C.
11 § 1231 note.

12  The Court agrees with Respondents that Sridej's argument that her
13 extradition violates the CAT is outside the scope of the Court's habeas review.
14 The CAT is a treaty signed and ratified by the United States and implemented by
15 statute as part of the Foreign Affairs Reform and Restructuring ("FARR") Act of
16 1998 ("FARRA"). 8 U.S.C. § 1231. It is "the policy of the United States not
17 to...extradite...any person to a country in which there are substantial grounds
18 for believing the person would be in danger of being subjected to torture." *Id*. The
19 statute requires that "the appropriate agencies...prescribe regulations to
20 implement the obligations of the United States under Article 3 of the United
21 Nations Convention Against Torture." *Id*.

22  It is the Secretary of State that must make a torture determination when
23 an extraditee makes a torture claim. *See Trinidad*, 683 F.3d at 956. Here, the
24 Secretary of State has not yet made a decision as to whether Sridej will actually
25 be extradited. ECF No. 15 at 21. As such, whether the Secretary of State complied
26 with the procedural obligations under the CAT and the FARR Act are not ripe for
27 review. *See Trinidad*, 683 F.3d at 957 (stating that "habeas in extradition cases
28 extends only to ensure that the detainee receives the process to which he is due,

i.e., that the Secretary complied with her procedural obligations"). *See also Artukovic*, 784 F.2d at 1355-56 (stating that "[t]he scope of habeas review of an extradition order is severely limited"); *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and...whether there was any evidence warranting the finding that thee was reasonable ground to believe the accused guilty"). Accordingly, the Court denies habeas relief as to Ground Three without prejudice to Sridej renewing her claim upon a determination of extradition by the Secretary of State.

### d. Ground Four

In Ground Four, Sridej alleges a violation of her due process rights because she lacked the opportunity to provide a defense while the government's ability to prosecute was unfettered. ECF No. 14 at 18-21. Sridej argues that the Court should consider the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), to determine whether procedural due process was satisfied regarding the extradition proceeding. *Id.* at 19. She argues that she has an interest in the extradition proceeding and that there is a risk of erroneous determination. *Id.*

As explained above, authority over the extradition process is shared between the executive and judicial branches. *Santos v. Thomas*, 830 F.3d 987, 990-91 (9th Cir. 2016). The Court reiterates that the extradition court's review is limited to determining first, whether the crime which the person is accused is extraditable, that is, whether it falls within the terms of the extradition treaty, and second, whether there is probable cause to believe the person committed the crime charged. *Id.* "Given the limited nature of extradition proceedings, neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure apply." *Mainero v. Gregg*, 164 F.3d 1199, 1206 (9th Cir. 1999).

Evidence may be admitted as long as the evidence is authenticated and would "be received for similar purposes by the tribunals of the foreign country

11

from which the accused party shall have escaped." 18 U.S.C. § 3190. The accused, however, does not have the right to introduce evidence in defense because that would require the government seeking extradition "to go into full trial on the merits in a foreign country." *Collins v. Loisel*, 259 U.S. 309, 316 (1922). "[E]xtradition courts 'do not weigh conflicting evidence' in making their probable cause determinations.'" *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986).

As stated by the Ninth Circuit, statutorily imposed judicial functions encompass the entirety of a court's obligations in the extradition process. *See Lopez-Smith*, 121 F.3d 1322, 1326 (9th Cir. 1997) (finding the magistrate judge properly refused to hear evidence which did not bear on whether there was probable cause); *see also Prasoprat v. Benov*, 421 F.3d 1165, 1015 (9th Cir. 2003) (rejecting a petitioner's claim that a magistrate judge deprived him of due process by denying a discovery motion seeking evidence related to a discretionary exception in the applicable extradition treaty). The statute says that if the magistrate judge "deems the evidence sufficient to sustain the charge," then the magistrate "shall" certify that to the Secretary of State. *Id.*

The Court denies Sridej's claim that the extradition scheme violates due process to the extent that it is an "unfair adversarial process." ECF No. 14 at 20. Extradition proceedings are neither criminal trials nor full blown civil actions; they are administrative in character, and, as such, are not burdened with legalism and formalities with which American courts are familiar. *See Wright v. Henkel*, 190 U.S. 40, 57 (1903). Here, Sridej's liberty interests are protected by the very existence of "an unbiased hearing before an independent judiciary."[6] *In*

---

[6] *See also Glucksman v. Henkel*, 221 U.S. 508, 512 (1911) ("For of course a man is not to be sent from the country merely upon demand or surmise, yet if there Is presented, even in somewhat untechnical form according to our ideas, such reasonable ground to suppose him guilty as to make it proper that he should be tried, good faith to the demanding government requires his surrender").

12

1  *re Kaine*, 55 U.S. (14 How.) 103 (1852). "Inherent in the probable cause standard
2  is the necessity of a determination that the evidence is both sufficiently reliable
3  and of sufficient weight to warrant the conclusion." *U.S. v. Kin-Hong*, 110 F.3d
4  103, 120 (1st Cir. 1997). Accordingly, the Court denies habeas relief as to Ground
5  Four.

### e. Proper Respondents

Respondents request dismissal of the Attorney General and the Secretary of State and argues that they are not proper respondents. ECF No. 15 at fn 1. They rely on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), in their argument that typically the person who has the ability to produce the petitioner's presence before the court is the only proper respondent to a habeas petition. *Id.* The Supreme Court in *Padilla*, however, did not establish an inflexible rule that the immediate custodian of the petitioner is the sole proper respondent for all habeas petitions brought under 28 U.S.C. § 2241. Moreover, the Court in *Padilla* continued to reserve the question of whether the Attorney General is a proper respondent to a habeas petition filed by an alien who has been detained pending deportation and is challenging his removal from the United States. 542 U.S. at 435.

The Court notes that this petition involves possible executive action that goes beyond merely detaining Sridej in physical custody within this district. As such, the Court is not persuaded that the Secretary of State and the Attorney General are not proper respondents. Respondents' request to dismiss the Secretary of State and the Attorney General is therefore denied.

### IV. Motion to Stay Case

Sridej moved to stay extradition to allow her to pursue a habeas petition. ECF No. 7. Respondents opposed the stay and noted that a stay of extradition was not required as long as Sridej filed a habeas petition within fourteen days of the extradition court's certification order. ECF No. 11 at 2. As this order resolves

Sridej's 28 U.S.C. § 2241 habeas petition, the Court denies her motion to stay as moot.

## V. Certificate of Appealability

The Court need not determine whether a certificate of appealability is warranted. 28 U.S.C. § 2253(c)(1) does not require a certificate of appealability for an appeal because this would be an appeal from an order dismissing a petition for writ of habeas corpus under 28 U.S.C. § 2241, not a final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court or a final order in a proceeding under 28 U.S.C. § 2255. *See Forde v. U.S. Parole Commission*, 114 F.3d 878, 879 (9th Cir. 1997).

## VI. Conclusion

It is therefore ordered that Petitioner Sumontinee Sridej's amended petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 14) is DENIED.

It is further ordered that Petitioner's Motion to Stay Case (ECF No. 7) is DENIED as moot.

It is further ordered that the Clerk of Court enter judgment accordingly and close this case.

DATED THIS 10th day of July 2023.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

14